**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **In re:** | **Case No. 26-40267-357** |
| **MYRIKO FRANKS,** | **Chapter 7** |
| **Debtor.** | |

**MEMORANDUM OPINION**

The Chapter 7 case of Debtor Myriko Franks was dismissed because she twice failed to appear for the Section 341 meeting of creditors. Consistent with the Court's usual practice in this situation, the order dismissing the case barred the Debtor from commencing another bankruptcy case for 180 days, as provided in Section 109(g)(1) of the Bankruptcy Code.

Approximately two weeks later, the Debtor filed a motion to reinstate the case and an alternative motion to set aside the 180-day prohibition on commencing a new case. She argues that she appeared at the second setting of the meeting of creditors but acknowledges that she failed to provide the Chapter 7 Trustee with required documents until just before the meeting began.

For the reasons that follow, I conclude that the Debtor's behavior did not merit the 180-day bar to re-filing. But I also conclude that I cannot reinstate this case, and thus I will deny the Debtor's motion seeking that relief.

## I.    Background

The Debtor commenced this Chapter 7 case on January 21, 2026. The Chapter 7 Trustee requested dismissal of the case on March 26, using a text-only docket entry that states that the debtor failed to appear at a continued Section 341 meeting of creditors. The Debtor did not respond to the motion within the seven days permitted by the Court's local rules. I thus entered an order on April 3, dismissing the case for failure to appear at the meeting of creditors and prohibiting the Debtor from filing another bankruptcy petition within 180 days.

The Debtor requested reinstatement of the case and, alternatively, removal of the 180-day bar in motions filed on April 16 and 17. She alleges that she appeared at the continued

meeting of creditors on March 26 but that the Trustee declined to proceed with the meeting because he had just received her proof of identification, tax returns, and payment advices shortly before the meeting was scheduled to begin. The Debtor explains that she provided these documents to her attorney when the case was commenced, but he neglected to upload them to the Trustee's portal in a timely manner.

Neither the Trustee nor any other party responded to either motion. I thus accept the Debtor's recitation of the facts.

## II.     Analysis

### A.     Automatic Dismissal Under Section 521(i)

The Debtor's own explanation of the circumstances demonstrates why I cannot reinstate this case.

Under Section 521(i)(1) of the Bankruptcy Code, a case is "automatically dismissed" if an individual debtor does not file the documents required by Section 521(a)(1) within 45 days after filing a voluntary petition under Chapter 7 or Chapter 13. The required documents include "copies of all payment advices or other evidence of payment received within 60 days before the date of the filing of the petition, by the debtor from any employer of the debtor." 11 U.S.C. § 521(a)(1)(B)(iv).[1]

There are two statutory exceptions to the automatic-dismissal provision. If the debtor requests an extension during the initial 45-day period, the court may allow up to 45 additional days for the debtor to comply. *See id.* § 521(i)(3). And on the motion of the trustee before the deadline expires, the court may decline to dismiss the case if the debtor attempted in good faith to provide payment advices and "the best interest of creditors would be served by administration of the case." *Id.* § 521(i)(4). Because neither the Debtor nor the Trustee made a timely request under either of these exceptions, they do not apply here.

The disposition of the Debtor's motions depends on what it means for a bankruptcy case to be "automatically dismissed." The phrase cannot be given a literal meaning. Even in this age of artificial intelligence, a human being must evaluate whether a debtor has complied

---

[1] A debtor also must provide the trustee with a copy of her most recent federal tax return at least seven days before the date first set for the meeting of creditors. 11 U.S.C. § 521(e)(2)(A)(i). Because this is not a requirement in Section 521(a)(1), the Debtor's failure to comply with it does not trigger automatic dismissal.

with the filing requirements of Section 521(a)(1) and, if not, must cause a dismissal order to be entered.[2] But Congress's use of the term "automatically dismissed," odd though it may be, strongly suggests that a court has no ability to excuse dismissal after the deadline has passed. *See In re Spencer*, 388 B.R. 418, 421-22 (Bankr. D.D.C. 2008) (including extensive discussion of when and how a case is dismissed when § 521(i) applies).

Consistent with this understanding, one of my predecessors determined that "bankruptcy courts have no discretion to enlarge the time in which a debtor may provide the payment advices outside the explicit exceptions contained in §§ 521(i)(3) and (i)(4)." *In re Calhoun*, 359 B.R. 738, 740 (Bankr. E.D. Mo. 2007). In that case, the debtor attempted to send the trustee copies of his payment advices on the 47th day post-petition. *See id.* Although Section 521(i)(3) was inapplicable, the debtor asserted that he received an extension under Section 521(i)(4) because of a scheduling order that said that the "trustee's continuance of a meeting of creditors shall be deemed a request to extend the deadline of § 521(i)." *Id.*[3] Despite this language in the scheduling order, Judge McDonald noted that one of the conditions of an extension under Section 521(i)(4) is that the debtor has made a good-faith attempt to file the payment advices before the deadline. *See id.* Because the record was clear that the debtor had not attempted to file his payment advices until after the expiration of the deadline, the Debtor was not eligible for an extension pursuant to Section 521(i)(4). *See id.* at 741. The court held that, because Sections 521(i)(3) and (4) did not apply, it had "no discretion under § 521(i)(1) but to dismiss [the] case effective on the 46th day after [the debtor] filed his petition for relief." *Id.*

In the 19 years since *Calhoun* was decided, several appellate courts have reached the opposite conclusion, holding that a bankruptcy court retains discretion to excuse non-compliance with the 45-day deadline after the fact. *See, e.g., In re Amir*, 436 B.R. 1, 25 (B.A.P. 6th Cir. 2010).

The Ninth Circuit, for example, looked to the text of Section 521(a)(1)(B), which requires a debtor to file payment advices "unless the court orders otherwise." *See In re Warren*, 568 F.3d 1113, 1117 (9th Cir. 2009). The court concluded that the tension between a court's

---

[2] This is particularly true in districts such as this one, in which the local rules permit the debtor to submit payment advices to the trustee rather than file them with the Court. *See* L.R. 1007-2(A).

[3] The Court's local rules now state expressly that a continuance of the meeting of creditors "will not be deemed a request or consent to extend the deadline of Bankruptcy Code § 521(i)." L.R. 1007-2(A).

ability to order otherwise under Section 521(a)(1)(B) and the requirement of automatic dismissal under Section 521(i)(1) created an ambiguity that justified consideration of the purpose of the statute. *See id.* at 1117-18. It determined that the principal purpose of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, which enacted Section 521(i), was "to prevent abusive bankruptcy filings." *Id.* at 1118. And on the facts of *Warren*, in which the debtor was using his own failure to file documents as an excuse to escape a Chapter 7 case in which the trustee was pursuing non-exempt assets, the Ninth Circuit concluded that abuse could be best prevented by permitting the bankruptcy court to order, after the deadline passed, that the debtor was not required to file payment advices after all. *See id.* at 1118.

The facts and the analysis in *In re Acosta-Rivera*, 557 F.3d 8 (1st Cir. 2009), are similar. That case also involved debtors who sought to take advantage of their own omissions to extract themselves from a Chapter 7 case in which they had not disclosed a valuable asset. *See id.* at 10. The First Circuit acknowledged that strict enforcement of the automatic-dismissal requirement would advance Congress's goal to stem the tide of consumer bankruptcy filings. *See id.* at 13. Nevertheless, the court was concerned about giving "debtors with something to hide … an escape hatch to be opened as needed." *Id.* The court of appeals thus concluded that a bankruptcy court may employ Section 521(a)(1)(B) to order otherwise "when the missing information has become irrelevant or extraneous," even after the automatic-dismissal deadline has passed. *Id.* at 14.

I respectfully disagree with the courts that have found ambiguity in Section 521. The plain language of Section 521(i) requires that "the case shall be automatically dismissed" when a debtor "fails to file all of the information required under subsection (a)(1)." The requirement of automatic dismissal upon a debtor's failure to timely file required information "is clear and unmistakable." *In re Bonner*, 374 B.R. 62, 64 (Bankr. W.D.N.Y. 2007). The court's power under Section 521(a)(1)(B) to order that payment advices need not be provided is not cabined by any substantive requirements, but it must be temporally limited to the period before the case is to be automatically dismissed. If it were not so, automatic dismissal would be nothing more than discretionary dismissal.

Even if I found it necessary to rely on the statutory purpose, I am not convinced that the analysis of the First and Ninth Circuits is sound. Prevention of bankruptcy abuse was, of course, one of the principal goals of BAPCPA. The behavior of the debtors in *Warren* and *Acosta-Rivera* was abusive in the extreme, but the fact pattern in those cases—in which a trustee unearths hidden assets but fails to notice that the debtor has not satisfied basic statutory requirements—also is exceedingly rare. Much more common is the situation in which a debtor files a bare-bones bankruptcy petition, without any serious intent to pursue the case to

completion, to obtain the benefit of the automatic stay for as long as the Code or the court will permit. There is no reason to think that Congress intended to give bankruptcy judges the discretion to permit abuse of this sort to play out over an extended period. And in any event, bankruptcy judges have tools other than Section 521(a)(1)(B) to deal with debtors who engage in outrageous conduct, including sanctions and referral to the United States Attorney for potential prosecution.

I therefore agree with Judge McDonald that a bankruptcy court has discretion to excuse a debtor from providing information within the first forty-five days after a case is commenced, but if the information is neither provided nor excused during that period, the court has "no discretion but to dismiss the case." *Calhoun*, 359 B.R. at 740.

The Debtor was required to submit her payment advices to the Trustee by March 9, 2026. By her own admission, she did not comply. If the case were still pending, Section 521(i) would require me to dismiss it. The statute similarly requires me to deny the Debtor's request for reinstatement. *See Bonner*, 374 B.R. at 65.

### B.     Bar to Re-Filing Under Section 109(g)(1)

Section 109(g)(1) provides that an individual cannot be a debtor in a bankruptcy case if that individual had another case pending within "the preceding 180 days" that "was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case." 11 U.S.C. § 109(g)(1). "Failure to attend a creditors meeting is a failure to obey a court order within the meaning of section 109(g)(1)." *In re Montgomery*, 37 F.3d 413, 414 (8th Cir. 1994).

Although the Debtor does not dispute that a 180-day bar would be appropriate if she had failed to appear at two scheduled meetings of creditors, she contends that she appeared at the meeting on March 26, 2026. Because she appeared, the Debtor argues, there was no failure, much less a willful failure, to obey a court order.

The Debtor bears the burden to prove that her failure to appear at the meeting of creditors was not willful. *See Montgomery*, 37 F.3d at 415. "Although the term 'willful' is not defined in the Code, courts have interpreted it to mean deliberate or intentional, rather than accidental or that which is beyond the debtor's control." *In re Wen Hua Xu,* 386 B.R. 451, 455 (Bankr. S.D.N.Y. 2008). "A willful failure to do a required act necessitates a showing that the person, with notice of their responsibility, intentionally disregarded it or demonstrated plain indifference." *In re Welling*, 102 B.R. 720, 723 (Bankr. S.D. Iowa 1989) (cleaned up).

The Debtor asserts, without contradiction, that she attended the meeting of creditors on its second scheduled date and that the Trustee did not conduct the meeting. It appears that the case was not dismissed because of her attendance or lack of attendance at the meeting, but instead because of her failure to provide information in advance of the meeting. The missing information was required by the Bankruptcy Code, but not by a court order. Additionally, nothing in the record suggests that the Debtor's omissions were willful, as opposed to negligent. I therefore will grant the Debtor's motion seeking relief from the 180-day bar to filing a new bankruptcy case.

## III.    Conclusion

For the reasons explained above, I will enter a separate order denying the Debtor's motion to reinstate this case but granting the Debtor's motion to set aside the prohibition on commencing a new case.

Dated:  June 11, 2026  
St. Louis, Missouri  
jah

Brian C. Walsh  
United States Bankruptcy Judge

**Copies mailed to:**

**Douglas M. Heagler**  
Heagler Law Firm  
7733 Forsyth, Ste. 1100  
Clayton, MO 63105  
ATTORNEY FOR DEBTOR

**Myriko Franks**  
1070 Riverview Blvd  
St Louis, MO 63147  
DEBTOR

**Seth A. Albin**  
Seth Albin, Trustee  
903 S. Lindbergh Blvd.  
Suite 200  
St. Louis, MO 63131  
CHAPTER 7 TRUSTEE

**Office of U.S. Trustee**
111 S Tenth St, Ste 6.353
St. Louis, MO 63102
U.S. TRUSTEE

**ALL CREDITORS AND PARTIES IN INTEREST LISTED ON THE MAILNG MATRIX**